COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-178-CR *
 
 
 
BOBBY 
GENE BUTLER                                                            APPELLANT
 
V.
 
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY
 
------------
 
OPINION
 
------------
        Appellant 
was charged by information with assault-family violence and pleaded not guilty. 
Appellant was found guilty by a jury and sentenced by the trial court to 
two-hundred-seventy days’ confinement, probated for a term of eighteen months. 
In a single issue, Appellant argues that the trial court erred in making a 
factual finding of family violence rather than submitting this issue to the 
jury. We affirm.
        Because 
sufficiency of the evidence is not at issue, we need only briefly discuss the 
facts of this case. The record shows that Appellant and the victim, Janyce 
Couch, were engaged, had a child together, and had been living together for 
approximately two and a half years. Couch testified that on the evening of 
October 20, 2003, she and Appellant got into an argument and she was assaulted 
by Appellant. She stated they were in the bedroom and that Appellant came to her 
side of the bed, pushed her down, got on top of her, and pinned her to the bed 
by placing his knee on her chest. She testified that he began to punch the 
pillow on either side of her head, striking the side of her head twice. Couch 
stated that she was able to get away from Appellant and attempted to call for 
help; however, they began to struggle over the phone, during which time 
Appellant grabbed her by her arm and pushed her into the wall, causing scratches 
and bruises to her arm.
        Appellant 
challenged Couch’s testimony regarding the events that caused her injuries. 
Appellant testified that on the night of October 20, 2003, they got into a 
disagreement, he put his arm on her shoulder, and they fell to the bed. He 
stated that he did fall on top of her, but that he immediately got up. He 
testified that he used his hand to push himself up, but did not punch the 
pillow. Appellant further testified that on October 17, 2003, they had gotten 
into an argument during which time he tried to leave with their child. He stated 
that Couch tried to take the child, and he used his hand to “move [her] away 
from the door.”
        The 
jury subsequently found Appellant guilty. At the punishment phase, the trial 
court made an affirmative finding that Appellant and the victim were members of 
the same household at the time of the offense. In a single issue, Appellant 
argues that the trial court erred in making a factual finding of family violence 
without submitting the issue to the jury.
        Appellant’s 
argument appears twofold: (1) he did not receive “notice that he was being 
tried for assault with a finding of family violence to be added”; and (2) 
based on the United States Supreme Court’s decisions in Apprendi v. New 
Jersey and Blakely v. Washington, the finding of family violence had 
to be submitted to the jury. See Blakely v. Washington, 124 S. Ct. 2531, 
2536 (2004); Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 
2362-63 (2000). Our sister court has recently addressed both parts of this 
issue. See Thomas v. State, 150 S.W.3d 887 (Tex. App.—Dallas 2004, pet. 
filed). We agree with its reasoning and decision, and thus adopt its opinion as 
set forth below.
        Under 
the code of criminal procedure, in the trial of an offense against a person, 
“if the court determines that the offense involved family violence . . . the 
court shall make an affirmative finding of that fact and enter the affirmative 
finding in the judgment of the case.” Tex. 
Code Crim. Proc. Ann. art. 42.013 (Vernon Supp. 2004-05); see also 
Thomas, 150 S.W.3d at 888. The family code defines family violence as “an 
act by a member of a family or household against another member of the family or 
household that is intended to result in physical harm, bodily injury, [or] 
assault.” Tex. Fam. Code Ann. § 
71.004(1) (Vernon 2002); see Thomas, 150 S.W.3d at 888. The family code's 
definition of “family” includes individuals who are the parents of the same 
child, without regard to marriage. Tex. 
Fam. Code Ann. § 71.003. Additionally, the family code’s definition of 
“household” includes persons living together in the same dwelling, without 
regard to whether they are related to each other. Id. § 71.005.
        A 
finding of family violence “impacts a defendant's sentence only if the 
defendant has previously committed a family-violence assault.” Thomas, 
150 S.W.3d at 888. Under the penal code, a misdemeanor assault, such as the one 
in this case, becomes a third degree felony if it is committed against “a 
member of the defendant's family or household, if it is shown on the trial of 
the offense that the defendant has been previously convicted of an offense 
against a member of the defendant’s family or household.” Tex. Penal Code Ann. § 22.01(b)(2) 
(Vernon Supp. 2004-05); see Thomas, 150 S.W.3d at 888. Here, however, the 
State did not attempt to prove Appellant had previously been convicted of an 
assault involving family violence. Thomas, 150 S.W.3d at 888. The 
evidence before the trial court simply showed the single family-violence assault 
alleged in the information. Id. Thus, the family violence finding could 
not increase Appellant’s sentence in this case.[1]
        Nevertheless, 
the State sufficiently notified Appellant of its intent to seek a finding of 
family violence. In the information, the caption indicates the charge as 
“ASSAULT FAMILY VIOLENCE,” and the State alleged Appellant had assaulted 
Janyce Couch. The record clearly reflects Appellant's awareness that Couch was 
his fiancee and that they had a child together. See id. at 888-89 
(finding sufficient notice when record showed victim was defendant’s ex-wife 
and they had a child together). Under the family code, and as found by the trial 
court, they were not only members of the same household, but they also met the 
definition of “family.” Tex. Fam. 
Code Ann. § 71.003; see also Thomas, 150 S.W.3d at 889. And under 
the code of criminal procedure, the trial court had no discretion in entering a 
family violence finding once it determined the offense involved family violence. 
See Tex. Code Crim. Proc. Ann. 
art. 42.013; Thomas, 150 S.W.3d at 889. Therefore, we hold that Appellant 
had all the notice necessary to prepare for the State to seek a family violence 
finding.
        Appellant 
also argues that the family violence finding should have been presented to the 
jury for consideration and cites as authority the United States Supreme Court 
decisions in Blakely v. Washington and Apprendi v. New Jersey. 
These cases set forth the rule that “[o]ther than the fact of a prior 
conviction, any fact that increases the penalty for a crime beyond the 
prescribed statutory maximum must be submitted to a jury, and proved beyond a 
reasonable doubt.” Blakely, 124 S. Ct. at 2536; Apprendi, 530 
U.S. at 490, 120 S. Ct. at 2362-63.
        Appellant 
appears to challenge the constitutionality of article 42.013 under both the 
United States and Texas Constitutions. However, as Appellant has failed to 
provide any argument or authority that the Texas Constitution provides him 
greater protection in this instance and has failed to independently develop this 
argument, we will address Appellant’s constitutional claims together. See 
Riddle v. State, 888 S.W.2d 1, 7 (Tex. Crim. App. 1994) (holding that 
arguments under the United States and Texas Constitutions must be developed 
independently of the other), cert. denied, 514 U.S. 1068 (1995); Johnson 
v. State, 853 S.W.2d 527, 533 (Tex. Crim. App. 1992) (declining to address 
appellant’s Texas constitutional claims when he failed to provide any argument 
or authority as to how protection under Texas Constitution was different than 
protection under United States Constitution), cert. denied, 510 U.S. 852 
(1993).
        There 
are two types of challenges to the constitutionality of a statute: the statute 
is unconstitutional as applied to the defendant, or the statute is 
unconstitutional on its face. Fluellen v. State, 104 S.W.3d 152, 167 
(Tex. App.—Texarkana 2003, no pet.). An as-applied challenge to a statute 
cannot be raised for the first time on appeal. See Garcia v. State, 887 
S.W.2d 846, 861 (Tex. Crim. App. 1994), cert. denied, 514 U.S. 1005 
(1995). Because Appellant did not make an as-applied challenge in the trial 
court, we will assume he is making a facial challenge to the constitutionality 
of article 42.013. A facial challenge to a statute may be raised for the first 
time on appeal. Ex parte Flores, 130 S.W.3d 100, 106 (Tex. App.—El Paso 
2003, pet. ref’d). A facial challenge to a statute is the most difficult 
challenge to mount successfully because the challenger must establish that no 
set of circumstances exists under which the statute will be valid. Santikos 
v. State, 836 S.W.2d 631, 633 (Tex. Crim. App.), cert. denied, 506 
U.S. 999 (1992). Thus, it is incumbent on the challenger to first show that the 
statute is unconstitutional as to him in his situation. Id. Moreover, 
even as to a facial challenge, it is not sufficient to show that the statute may 
be unconstitutional as to others. Id. It is still a prerequisite to a 
facial challenge that the challenger establish that the statute is 
unconstitutional as applied to him. Id.; Fluellen, 104 S.W.3d at 
167.
        Appellant’s 
constitutional challenge is not ripe for review because the statute has not yet 
been applied to him. The ripeness doctrine examines the timing of a lawsuit and 
its factual posture at the time of its filing. Ex parte Cross, 69 S.W.3d 
810, 814 (Tex. App.—El Paso 2002, no pet.). It also allows courts to avoid 
premature adjudication and serves constitutional interests in prohibiting 
advisory opinions. Id. The theory behind the doctrine is straightforward 
- if the plaintiff's injury is not concrete and depends on contingent, remote, 
or hypothetical facts, the court does not have jurisdiction to hear the dispute. 
Id.
        A 
finding of family violence under article 42.013 would only affect Appellant by 
increasing “the penalty for a crime beyond the prescribed statutory maximum” 
in violation of Apprendi if he were subsequently convicted for an 
additional assault-family violence. See Apprendi, 530 U.S. at 490, 120 S. 
Ct. at 2362-63. It is not until this hypothetical subsequent conviction occurs 
that the level of assault would be increased from a Class A misdemeanor to a 
third degree felony, subjecting Appellant to a higher penalty range. See Tex. Penal Code Ann. § 22.01(b)(2).
        The 
application of article 42.013 that would allow a higher penalty range is 
contingent on Appellant being convicted for a subsequent assault-family 
violence. Because it is contingent on a remote possibility of a future 
conviction, the statute has not been unconstitutionally applied to Appellant. See 
Ex parte Fox, No. 14-02-00446-CR, 2003 WL 21191227, at *4 (Tex. 
App.—Houston [14th Dist.] 2003, no pet.) (not designated for publication) 
(holding that appellant could not make any constitutionality claim as to Texas 
Code of Criminal Procedure article 62.02 because it had not been applied to him 
in any unconstitutional manner). Thus, the proper time to raise this 
constitutional argument is after a subsequent charge or indictment for 
assault-family violence, if one arises. See id. (stating that the 
proper time for appellant to raise his constitutional challenge is after he has 
been charged or indicted for the future offense). Accordingly, Appellant’s 
constitutional challenge is not ripe for our review.
        Furthermore, 
we agree with the State and our sister court in Thomas that Blakely 
and Apprendi do not affect the validity of the finding of family violence 
by the trial court. Thomas, 150 S.W.3d at 889. The family violence 
finding made here had no effect whatsoever on Appellant's punishment in this 
case. Id.; see Resendiz v. State, 112 S.W.3d 541, 550 (Tex. Crim. 
App. 2003) (acknowledging that Apprendi applies only to facts that 
increase the penalty beyond the “prescribed statutory maximum”), cert. 
denied, 124 S. Ct. 2098 (2004). In the present case there were no facts that 
would increase Appellant’s penalty. Appellant contends that “[t]he finding 
by the trial court enhances the effect of the conviction by making it a 
pre-cursor offense to a felony if an assault involving family violence is 
charged subsequently.” However, Appellant provides no authority as to how this 
statement makes Blakely and Apprendi applicable in this case, and 
we find that this argument is without merit. Therefore, we agree with our sister 
court in Thomas and conclude that the holdings in Blakely and Apprendi 
do not affect Appellant's case. Thomas, 150 S.W.3d at 889.
        We 
conclude that Appellant had sufficient notice that the trial court would be 
required to make an affirmative finding of family violence, that Appellant’s 
constitutional challenge of article 42.013 is not yet ripe, and that Blakely 
and Apprendi have no application to the facts of this case. Thus, we 
overrule Appellant’s sole issue and affirm the trial court’s decision.
  
  
                                                          ANNE 
GARDNER
                                                          JUSTICE
    
  
PANEL 
B:   DAUPHINOT, HOLMAN, and GARDNER, JJ.
 
DAUPHINOT, 
J. filed a dissenting opinion.
 
PUBLISH
 
DELIVERED: 
March 31, 2005



 
COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-178-CR
  
  
  
BOBBY 
GENE BUTLER                                                            APPELLANT
 
V.
 
THE 
STATE OF TEXAS                                                                  STATE
  
  
------------
 
FROM 
COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY
 
------------
 
DISSENTING OPINION
 
------------
        The 
trial court’s judgment in this case provides that the jury found Appellant 
guilty of assault family violence. The jury did not so find; it found Appellant 
guilty of assault. The charging language of the information does not allude to 
family violence; the jury charge itself does not mention family violence. 
Instead, the trial court entered the family violence finding on its own after 
the jury convicted Appellant of simple assault. The majority upholds the trial 
court’s judgment.  Because I believe the majority opinion disregards the 
state and federal constitutional rights to a jury trial,[1] 
I must respectfully dissent from the holding that the trial judge in a jury 
trial may properly replace the jury as the factfinder in determining whether the 
evidence shows that the offense involves family violence.
        The 
majority states that because a finding of family violence does not result in a 
longer maximum sentence, the right to a jury trial does not prohibit the trial 
court’s usurping the jury’s factfinding power to determine that the offense 
involves family violence and to enter this finding on the judgment. The flaws in 
this conclusion can be revealed by examining the law concerning the deadly 
weapon finding as well as a recent line of U.S. Supreme Court cases—Apprendi, 
Ring, Blakely, and Booker.[2]
Deadly Weapon 
Finding
        “In 
1977, the Texas Legislature proposed adding a ‘deadly weapon’ provision to 
article 42.12 of the Code of Criminal Procedure.”[3]  
Although this measure would not necessarily lengthen the maximum sentence, it
  
would have numerous legal consequences, including the fact that ‘where a 
deadly weapon has been exhibited during a commission of an offense, the parole 
date [would be] figured on flat time alone without consideration of good 
time.’  During that session, the Texas Department of Corrections 
expressed concern to the Legislature that it would be unable to determine 
whether a particular inmate was subject to a deadly weapon finding if there were 
no express ‘deadly weapon’ language contained in the indictment or 
elsewhere.[4]
  
The 
Texas Legislature responded by including a subsection providing “that when the 
trier of fact found that a deadly weapon or firearm was used in the commission 
of the offense, that finding would be entered on the judgment, which would then 
be sent with the order of commitment.”[5]  
This legislative fix, however,
  
did not . . . address the circumstances under which the trial judge should enter 
a deadly weapon finding in the judgment when a jury, not the judge, was the 
factfinder—how, for example, would a trial judge know when the jury had, in 
fact, found that the defendant used or exhibited a deadly weapon during the 
commission of the offense?[6]
  
 
This 
was the question the Texas Court of Criminal Appeals addressed in Polk v. 
State.[7]  The Court noted that
  
"[t]he indictment, charge, verdict and judgment" were all relevant in 
determining if, when, and how a jury makes a deadly weapon finding.[8]  First, the Court analyzed the term 
"affirmative finding," and concluded that "these words taken 
together were intended to mean the trier of fact's express determination 
that a deadly weapon or firearm was actually used or exhibited during the 
commission of the offense."[9]  The trial 
judge could not enter a deadly weapon finding simply because some evidence 
indicated that the defendant had used a deadly weapon and therefore the jury's 
general verdict might imply that it had believed that evidence.  We 
quoted language from Barecky v. State[10]  
to illustrate the problem with implied deadly weapon findings:
  
“The 
jury found appellant 'guilty as charged in the indictment.'  The indictment 
contains no mention of a deadly weapon.  Neither does the court's charge to 
the jury.  Thus, the court entered its finding as to use of a deadly weapon 
in the absence of such an 'affirmative finding' by the appropriate trier of 
fact.  This was improper."[11]
  
Thus, 
when neither the indictment nor the jury charge contained any "deadly 
weapon" language, a trial court could not enter an "implied" 
deadly weapon finding based solely upon its own assessment of the evidence and a 
general "guilty" verdict.  Because the trial judge was not the 
factfinder, it did not have the authority to "find" implied facts that 
the jury did not expressly find.[12]
 
 
Similarly, 
the right to a jury trial applies to cases in which the evidence may show family 
violence “is involved.”  Adopting the Lafleur court’s 
reasoning in discussing the deadly weapon affirmative finding in Polk,[13] when neither the information nor the jury charge 
contains any “family violence” language, a trial court cannot enter an 
“implied” or “its own” family violence finding based solely upon its own 
assessment of the evidence and a general "guilty" verdict.  
Because the trial judge in the case before us was not the factfinder, he did not 
have the authority either to "find" implied facts that the jury did 
not expressly find or to make his own determination of facts.[14]
Apprendi, 
Ring, Blakely, and Booker
        In 
Article 42.013 of the Texas Code of Criminal Procedure, the Texas Legislature 
provided, “In the trial of an offense under Title 5, Penal Code, if the court 
determines that the offense involved family violence, as defined by Section 
71.004, Family Code, the court shall make an affirmative finding of that fact 
and enter the affirmative finding in the judgment of the case.”[15]  When the Texas Legislature enacts a statute, it 
is presumed to comply with both the Texas Constitution and the U.S. 
Constitution.[16]  If at all possible, we must 
therefore interpret a statute in a manner that renders it constitutional.[17]  Almost ninety years ago, Justice Holmes wrote 
that "[a] statute must be construed, if fairly possible, so as to avoid not 
only the conclusion that it is unconstitutional but also grave doubts upon that 
score."[18]  If there are two reasonable 
interpretations of a statute and if one would make the statute unconstitutional 
and the other would not, then we must choose the reasonable interpretation that 
avoids the constitutional infirmity.[19]  The 
majority violates this canon, as demonstrated by the discussion of the Apprendi 
line of cases below.
        In 
Apprendi v. New Jersey, the U.S. Supreme Court held that the Sixth 
Amendment does not permit a defendant to be "expose[d] . . . to a penalty 
exceeding the maximum he would receive if punished according to the facts 
reflected in the jury verdict alone."[20]  
As the Ring court explained, in Apprendi the Court
  
held that Apprendi's sentence violated his right to "a jury determination 
that [he] is guilty of every element of the crime with which he is charged, 
beyond a reasonable doubt."  That right attached not only to 
Apprendi's weapons offense but also to the "hate crime" aggravating 
circumstance.  New Jersey, the Court observed, "threatened Apprendi 
with certain pains if he unlawfully possessed a weapon and with additional pains 
if he selected his victims with a purpose to intimidate them because of their 
race."  "Merely using the label 'sentence enhancement' to 
describe the [second act] surely does not provide a principled basis for 
treating [the two acts] differently."
  
The 
dispositive question, we said, "is one not of form, but of 
effect."  If a State makes an increase in a defendant's authorized 
punishment contingent on the finding of a fact, that fact—no matter how the 
State labels it—must be found by a jury beyond a reasonable doubt.[21]
 
 
“[A]ll 
the facts which must exist in order to subject the defendant to a legally 
prescribed punishment must be found by the jury.”[22]  
The Ring court, in extending Apprendi’s holding to death penalty 
determinations, noted that
   
“[t]he guarantees of jury trial in the Federal and State Constitutions reflect 
a profound judgment about the way in which law should be enforced and justice 
administered. . . . If the defendant preferred the common-sense judgment of a 
jury to the more tutored but perhaps less sympathetic reaction of the single 
judge, he was to have it."[23]
 
 
        With 
Blakely, in striking down Washington’s sentencing guidelines, the U.S. 
Supreme Court further clarified what it meant by “statutory maximum”:
  
Our precedents make clear . . . that the "statutory maximum" for Apprendi 
purposes is the maximum sentence a judge may impose solely on the basis of 
the facts reflected in the jury verdict or admitted by the defendant.  
In other words, the relevant "statutory maximum" is not the maximum 
sentence a judge may impose after finding additional facts, but the maximum he 
may impose without any additional findings.  When a judge inflicts 
punishment that the jury's verdict alone does not allow, the jury has not found 
all the facts "which the law makes essential to the punishment,” and the 
judge exceeds his proper authority.[24]
 
The 
Blakely court also emphasized the right to a jury trial provided in the 
U.S. Constitution:
   
Ultimately, our decision cannot turn on whether or to what degree trial by jury 
impairs the efficiency or fairness of criminal justice.  One can certainly 
argue that both these values would be better served by leaving justice entirely 
in the hands of professionals; many nations of the world, particularly those 
following civil-law traditions, take just that course. There is not one shred of 
doubt, however, about the Framers' paradigm for criminal justice: not the 
civil-law ideal of administrative perfection, but the common-law ideal of 
limited state power accomplished by strict division of authority between judge 
and jury.  As Apprendi held, every defendant has the right to insist 
that the prosecutor prove to a jury all facts legally essential to the 
punishment.[25]
 
        Finally, 
in Booker, the Court applied Blakely to reduce the status of the 
federal sentencing guidelines from mandatory to advisory.[26]  
Before Booker, the sentencing guidelines required a trial court to make 
independent findings after a jury verdict.  These judge-made findings, in 
turn, often mandated that a defendant receive a higher sentence than the jury 
verdict justified.  The guidelines address such areas as the defendant’s 
criminal history and his role in the offense but also examine such issues as the 
status of the complainant, whether the defendant accepted responsibility for the 
offense (by pleading guilty), and whether he used a special skill in the 
completion of a crime (such as those skills possessed by a lawyer, accountant, 
pilot, or chemist).[27]
        In 
Booker, the Court reminds us,
  
It has been settled throughout our history that the Constitution protects every 
criminal defendant "against conviction except upon proof beyond a 
reasonable doubt of every fact necessary to constitute the crime with which he 
is charged."  It is equally clear that the "Constitution gives a 
criminal defendant the right to demand that a jury find him guilty of all the 
elements of the crime with which he is charged."[28]
 
 
The 
majority asserts that Blakely and Apprendi do not affect the 
validity of the trial court’s family violence finding because that finding 
“had no effect whatsoever on Appellant’s punishment in this case.”[29]  I disagree.
        While 
a family violence finding may not increase the length of the sentence in the 
first case in which a finding is entered, it does make more onerous the possible 
conditions of community supervision.   That is, the finding affects 
the sentence in a way that is similar to the effect of the federal sentencing 
guidelines before Booker.  Section 42.12 of The Texas Code of 
Criminal Procedure provides,
If 
a judge grants community supervision to a person convicted of an offense under 
Title 5, Penal Code, that the court determines involves family violence, the 
judge may require the person to make one payment in an amount not to exceed $100 
to a family violence shelter center that receives state or federal funds and 
that serves the county in which the court is located.  In this subsection, 
"family violence" has the meaning assigned by Section 71.004, Family 
Code, and "family violence shelter center" has the meaning assigned by 
Section 51.002, Human Resources Code.[30]
 
 
That 
section further provides,
 
If 
the court grants community supervision to a person convicted of an offense 
involving family violence, as defined by Section 71.004, Family Code, the court 
may require the defendant to attend, at the direction of the community 
supervision and corrections department officer, counseling sessions for the 
elimination of violent behavior with a licensed counselor, social worker, or 
other professional who has been trained in family violence intervention or to 
attend a battering intervention and prevention program if available that meets 
guidelines adopted by the community justice assistance division of the Texas 
Department of Criminal Justice.  If the court requires the defendant to 
attend counseling or a program, the court shall require the defendant to begin 
attendance not later than the 60th day after the date the court grants community 
supervision, notify the community supervision and corrections department officer 
of the name, address, and phone number of the counselor or program, and report 
the defendant's attendance to the officer.  The court shall require the 
defendant to pay all the reasonable costs of the counseling sessions or 
attendance in the program on a finding that the defendant is financially able to 
make payment.  If the court finds the defendant is unable to make payment, 
the court shall make the counseling sessions or enrollment in the program 
available without cost to the defendant.  The court may also require the 
defendant to pay all or a part of the reasonable costs incurred by the victim 
for counseling made necessary by the offense, on a finding that the defendant is 
financially able to make payment.  The court may order the defendant to 
make payments under this subsection for a period not to exceed one year after 
the date on which the order is entered.[31]

        The 
judgment in this case reveals that Appellant was subjected to both of these 
conditions of community supervision. The majority states in a footnote that “a 
court may impose any reasonable condition on probation, but that does not 
constitute an increase in Appellant’s sentence.”[32]  
However, given the text of sections eleven and twelve of article 42.12, imposing 
a requirement of a $100 payment to a family shelter on a criminal defendant 
convicted of a misdemeanor would not be reasonable without a family 
violence finding.[33]
        Additionally, 
the finding of family violence subjects Appellant to future consequences that 
one convicted of simple assault does not face.  When a person commits 
assault, the offense is a class A misdemeanor, except that
the 
offense is a felony of the third degree if the offense is committed against:
                   
. . .
   
(2) 
a member of the defendant's family or household, if it is shown on the trial of 
the offense that the defendant has been previously convicted of an offense 
against a member of the defendant's family or household under this section.[34]
   
 
        Under 
the majority’s reasoning, an affirmative finding of family violence is entered 
on the judgment despite the factfinder making no such finding and despite the 
fact that the judge making the finding is not required to make the finding 
beyond a reasonable doubt or even by a preponderance of the evidence.  Yet 
that finding, and only that finding, subjects Appellant in this case to 
paying $100 to an agency unconnected to either the judicial system or the 
community supervision system.[35]  And in a 
subsequent prosecution for a family violence offense, the jury would rely on 
that judgment alone to find beyond a reasonable doubt that an earlier 
jury convicted the defendant of an offense involving family violence, boosting 
the offense from a class A misdemeanor to a third degree felony.
        Consequently, 
at the time the trial court entered the family violence finding and as a result 
of such finding, Appellant was subject to additional, unique burdens of 
community supervision and was branded with the additional mark of a family 
violence offender.  The trial court’s finding therefore imposed a greater 
hardship on him than the jury’s verdict allowed.  As a result, I would 
hold that Appellant was subject to a greater punishment under the family 
violence finding than he would have been under the jury’s verdict and that the 
trial court’s actions violated the strictures of the Apprendi line.[36]
Conclusion
        Because 
the majority’s interpretation of article 42.013 countenances the deprivation 
of a defendant’s right to a jury trial and, indeed, the deprivation of the 
right to due process of law under both state and federal constitutions, and 
because it violates the mandates of the U.S. Supreme Court, I must respectfully 
dissent.
  
                                                          LEE 
ANN DAUPHINOT
                                                          JUSTICE

 
 
PUBLISH
 
DELIVERED: 
March 31, 2005


NOTES
 
* Majority Opinion by Justice Gardner; Dissenting Opinion by 
Justice Dauphinot

MAJORITY OPINION NOTES
1.  
Appellant also states that he had to perform additional requirements, such as 
attending a Batterer’s Intervention Program, as a result of the family 
violence finding.  However, a court may impose any reasonable condition on 
probation, but that does not constitute an increase in Appellant’s sentence.
    *    *    *    
*    *    *    *    
*    *    *    *    
*    *    *    *    
*    *    *    *    
*    *    *    *    
*
DISSENTING OPINION NOTES
1. 
See U.S. Const. amends. VI, 
XIV; Tex. Const. art. I, §§ 10, 
15.
2. 
United States v. Booker, 125 S. Ct. 738 (2005); Blakely v. Washington, 
124 S. Ct. 2531 (2004); Ring v. Arizona, 536 U.S. 584, 122 S. Ct. 2428 
(2002); Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000).
3. 
Lafleur v. State, 106 S.W.3d 91, 94 (Tex. Crim. App. 2003).
4. 
Id. (citing Polk v. State, 693 S.W.2d 391, 393 n.1 (Tex. Crim. 
App. 1985 (quoting a bill analysis prepared by the general counsel for the Texas 
Department of Corrections)).
5. 
Id.
6. 
Id.
7. 
693 S.W.2d at 391-400.
8. 
Id. at 393.
9. 
Id.
10. 
639 S.W.2d 943 (Tex. Crim. App. 1982).
11. 
Polk, 693 S.W.2d at 394 (quoting Barecky, 639 S.W.2d at 945).
12. 
Lafleur, 106 S.W.3d at 94-95.
13. 
Id. at 95.
14. 
Id.
15. 
Tex. Code Crim. Proc. Ann. art. 
42.013 (Vernon Supp. 2004-05).
16. 
Tex. Gov’t Code Ann. § 
311.021(1) (Vernon 2005).
17. 
Sisk v. State, 131 S.W.3d 492, 494 (Tex. Crim. App. 2004); Lebo v. 
State, 90 S.W.3d 324, 326 (Tex. Crim. App. 2002); FM Props. Operating Co. 
v. City of Austin, 22 S.W.3d 868, 873 (Tex. 2000); In re D.L.C., 124 
S.W.3d 354, 362 (Tex. App.—Fort Worth 2003, no pet.).
18. 
United States v. Jin Fuey Moy, 241 U.S. 394, 401, 36 S. Ct. 658, 659 
(1916).
19. 
State v. Shoppers World, Inc., 380 S.W.2d 107, 111 (Tex. 1964).
20. 
Apprendi, 530 U.S. at 483, 120 S. Ct. at 2359.
21. 
Ring, 536 U.S. at 602, 122 S. Ct. at 2439 (citations omitted).
22. 
Apprendi, 530 U.S. at 499, 120 S. Ct. at 2367 (Scalia, J., concurring).
23. 
Ring, 536 U.S. at 609, 122 S. Ct. at 2443 (quoting Duncan v. 
Louisiana, 391 U.S. 145, 155-156, 88 S. Ct. 1444, 1451 (1968)).
24. 
Blakely, 124 S. Ct. at 2537 (citations omitted).
25. 
Id. at 2543.
26. 
Booker, 125 S. Ct. at 749, 755-56 (holding that imposing an enhanced 
sentence under the guidelines violates the Sixth Amendment right to jury trial), 
756-57 (severing the offending sections from the guidelines to leave the 
guidelines with an advisory role).
27. 
See generally United States Sentencing Commission, Guidelines Manual 
(Nov. 2004).
28. 
Booker, 125 S. Ct. at 748 (citations omitted).
29. 
Majority op. at 10.
30. 
Tex. Code Crim. Proc. Ann. art. 
42.12, § 11(h) (Vernon Supp. 2004-05).
31. 
Id. § 14(c).
32. 
Majority op. at 5.
33. 
See Tex. Code Crim. Proc. Ann. 
art. 42.12 § 11(a)(18) (authorizing maximum reimbursement of $50 to general 
revenue fund for those convicted of misdemeanors), § 11(a)(21) (authorizing 
maximum payment to crime stoppers organization of $50), § 11(b) (“A judge 
may not order a defendant to make any payments as a term or condition of 
community supervision, except for fines, court costs, restitution to the 
victim, and other conditions related personally to the rehabilitation of the 
defendant or otherwise expressly authorized by law.”) (emphasis added), § 
11(h).
34. 
Tex. Penal Code Ann. § 22.01(b) 
(Vernon Supp. 2004-05).
35. 
See Tex. Code Crim. Proc. Ann. 
art. 42.12, § 11(h).
36. 
See, e.g., Blakely, 124 S. Ct. at 2537 (“When a judge inflicts 
punishment that the jury's verdict alone does not allow, the jury has not found 
all the facts ‘which the law makes essential to the punishment,’ and the 
judge exceeds his proper authority.”) (citations omitted).